IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEAL FIU,<br><br>　　　　Petitioner,<br><br>　vs.<br><br>JOHN MARSHALL, Warden,<br><br>　　　　Respondent. | No. C 09-04655 LHK (PR)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |

Petitioner, a state prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. The Court ordered Respondent to show cause why the petition should not be granted. Respondent has filed an answer addressing the merits of the petition. Petitioner filed a traverse. Having reviewed the briefs and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented and denies the petition.

**BACKGROUND**[1]

According to testimony given at trial, on the night of July 24 and in the early morning hours of July 25, 2003, [Petitioner] Neal Fiu and four teenage members (Daniel G. (Danny), Joey O., Sammy V., and Brandon V.) [FN3.] of the street gang Sons of Death (SOD) were on [Petitioner's] front porch, drinking alcohol. Also present were Javier Cervantes (Javi) and Juan Cervantes (Juan). [Petitioner] was a long-time member of SOD and, according to Danny G., commanded respect from the young members.

---

[1] The facts of this case are taken from the California Court of Appeal opinion in *People v. Fiu*, 165 Cal. App. 4th 360, 367-69 (2008). (Resp't Ex. 2.)
Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.LHK\HC.09\Fiu655hcden.wpd

>FN3. At the time of the incident, the four boys were juveniles. All were charged in juvenile court with murder; all admitted violations of section 245, subdivision (a)(1) (assault with force likely to inflict great bodily injury) in exchange for agreements to testify.

While they were sitting on the porch, Salvador Espinoza walked past; he cursed, yelled the name of a rival gang, and threw a gang sign. Taking this as a challenge, [Petitioner] and the four teenagers approached Espinoza. After Brandon V. pushed Espinoza, Danny G. pulled out a .38 caliber weapon and aimed it at Espinoza's face. [Petitioner] told him not to shoot, saying they should beat up Espinoza instead. Espinoza tried to escape, but was caught and thrown to the ground. The teenagers and [Petitioner] punched and kicked Espinoza in the head and body until he lost consciousness. [FN4.] The group left Espinoza lying on the ground, apparently still alive, and everyone returned to the porch to continue drinking.

>FN4. At trial, the four juveniles gave differing accounts about the strength and targets of the [Petitioner's] blows to Espinoza. All agreed that [Petitioner] kicked Espinoza. Danny G. told police it was only once in the stomach, not in the head or face, but at trial testified it might have been in the head and body. Sammy V. and Joey O. testified that [Petitioner] kicked Espinoza in the head or face multiple times, but Brandon V. disputed that account saying [Petitioner] kicked him once in the upper body.

Shortly thereafter, Ezekiel Johnson [Footnote omitted] arrived at the house. [FN6.] At this point, [Petitioner] was either inside his house or in the back yard. The teenage gang members took Johnson to where Espinoza was lying, and Johnson said that he wanted to kill him. The four teenagers resumed kicking Espinoza. Javi smashed Espinoza's head against a parked car. Johnson put a milk crate over Espinoza's neck and jumped on it. Finally, Johnson and Joey O. stabbed Espinoza in the neck at least twice. Afterward, Johnson and Javi went into the house to wash blood from their hands. Johnson then drove the four young gang members to the home of Danny G.'s mother. She washed the blood from their clothes.

>FN6. Danny G. testified that Johnson arrived 10 to 15 minutes after the first attack on Espinoza.

The grand jury returned an indictment charging [Petitioner] with murder (§ 187—count 1), conspiracy to commit murder, robbery, and assault with force likely to cause great bodily injury (§§ 182, subd. (a)(1), 187, 211, 245, subd. (a)(1)—count 2), and street terrorism (§ 186.22, subd. (a)—count 3). The indictment alleged that [Petitioner] committed the first two counts for the benefit of a street gang (§ 186.22, subd. (b)(1)), and that he had two prior strikes, pursuant to sections 667, subdivisions (a)-(i), and 1170.12. A jury found [Petitioner] guilty of second degree murder, conspiracy to commit assault with force likely to cause great bodily injury, and street terrorism. The jury found true the allegations that the first two counts were committed for the benefit of a street gang. The [Petitioner] admitted one strike allegation. The court dismissed the second strike allegation (pursuant to stipulation of the parties), and sentenced [Petitioner] as follows: murder, 15 years to life, doubled to 30 years to life due to the prior strike, plus 10 years for the first gang enhancement (§ 186.22, subd. (b)(1)), totaling 40 years to life.[2] Sentences on counts 2 (including the second gang enhancement) and 3 were stayed

---

[2] The California Court of Appeals later modified the sentence to 30 years to life. (Resp't Ex. 2 at 32-33.)

      pursuant to section 654.  [Footnote omitted.]
(Resp't Ex. 2 at 2-4.)

## DISCUSSION

**A. Standard of Review**

      This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 384-86 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

      "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

      Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination

will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340. The Court must presume correct any determination of a factual issue made by a state court unless Petitioner rebuts the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a Petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). Here, that decision is the opinion of the California Court of Appeal.

**B.     Petitioner's Claims**

Petitioner raises the following claims in his federal habeas petition: (1) the trial court's failure to instruct on supervening causes, *sua sponte*, violated Petitioner's Fourteenth Amendment right to due process; (2) trial counsel rendered ineffective assistance of counsel by failing to request a correct instruction on supervening causes; and (3) the trial court's failure to correctly instruct the jury on the burden of proof for a withdrawal defense violated Petitioner's Fourteenth Amendment right to due process.[3]

   1. <u>Jury Instruction on Supervening Cause</u>

Petitioner claims that the trial court erred because it failed to give a jury instruction on supervening causes, *sua sponte*, and that the failure to give the instruction on supervening causes violated Petitioner's Fourteenth Amendment right to due process. Specifically, Petitioner claims that the failure to instruct on supervening causes misinformed the jury of the requirements to establish proximate cause, a required element of murder. Petitioner argues that because Johnson attacked the victim, without Petitioner's participation, about ten to fifteen minutes after the initial attack, Johnson's attack on the victim was a supervening act that broke the requisite causal connection between Petitioner's actions and the victim's death. Thus, Petitioner contends that

---

[3] This Court will not address Petitioner's false testimony claim raised for the first time in his traverse because a "[t]raverse is not the proper pleading to raise additional grounds for relief." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994).

the trial court should have provided an instruction on supervening causes, *sua sponte*, because without the additional instruction, the jury lacked the knowledge required to make an accurate proximate cause determination.

The California Court of Appeal rejected Petitioner's claim on two grounds. First, the Court determined that the Petitioner waived his right to an additional instruction because Petitioner failed to request it at trial. (Resp't Ex. 2 at 5.) In other words, the California Court of Appeal's held that Petitioner should have requested an additional jury instruction on supervening causes at trial, and his failure to request it at trial procedurally barred him from raising the issue on appeal. Second, the California Court of Appeal found that the instructions given to the jury were "a correct statement of law." (*Id.*)

      a.    Procedural Bar

The California Court of Appeal held that Petitioner waived his right to an additional instruction on supervening causes because he failed to request it at trial. (Resp't Ex. 2 at 5.) The California Court of Appeal addressed the challenged claim on the merits; however, it also clearly and expressly held that the issue was waived because Petitioner failed to request an amplified instruction. (*Id.*) Thus, Respondent argues that Petitioner is procedurally barred from complaining about the instructions. (Resp't Mem. P. & A. at 6; Docket No. 12.)

A federal court "will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). In cases in which a state prisoner has defaulted on his federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Id.* at 750. The Ninth Circuit has recognized and applied California's contemporaneous objection rule in affirming denial of a federal petition on grounds of procedural default where there was a complete failure to object at trial. *See Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (state appellate court's conclusion that trial counsel's

1  consent to jury instructions at trial was a clear and express waiver, and thus defendant's federal
2  claim challenging any instructions was procedurally barred).

3   The California Court of Appeal also reviewed Petitioner's claim on its merits.  However,
4  where, as here, the state court decision rests on clearly alternate grounds, one invoking a state
5  procedural bar and the other addressing the merits, the state procedural ground is still sufficiently
6  independent to preclude habeas review.  *See Bargas v. Burns*, 179 F.3d 1207, 1214 (9th Cir.
7  1999).  Here, Petitioner failed to object to the instructions given at trial, nor did Petitioner request
8  amplified instructions at trial.  Consequently, California's contemporaneous objection rule bars
9  federal habeas review of Petitioner's claim.  *Paulino*, 381 F.3d at 1092-93.  Moreover, Petitioner
10 fails to demonstrate cause for the default and actual prejudice as a result of the alleged violation
11 of law, nor does he demonstrate that failure to consider his claim will result in a fundamental
12 miscarriage of justice.  *Coleman*, 501 U.S. at 729-30.  Therefore, this Court cannot review the
13 claim.  Furthermore, even assuming that Petitioner did not waive his right to contest the
14 instructions, his claim does not warrant habeas relief.

15  b. Merits

16  Petitioner contends that the jury instructions provided in the modified version of CALJIC
17 No. 3.40 and CALJIC No. 3.41 were insufficient, and that a *sua sponte* supervening causes
18 instruction should have been provided.  The modified version of CALJIC No. 3.40 provided by
19 the trial court defined a cause of death as an "[act] [or] [omission] that sets in motion a chain of
20 events that produces *as a direct, natural and probable consequence* of the [act] [or] [omission]
21 the death in question without which the death would not occur." (Resp't Ex. 2 at 4) (emphasis in
22 original).  CALJIC No. 3.41 discusses concurrent causation and provides in relevant part, "When
23 the conduct of two or more persons contributes concurrently as a cause of death, the conduct of
24 each is a cause of death if that conduct was also a substantial factor contributing to the result.  A
25 cause is concurrent if it was operative at the moment of the death and acted with another to
26 produce the death." (*Id.*)

27  The omission of an instruction is less likely to be prejudicial than a misstatement of the
28 law.  *See Walker v. Endell*, 850 F.2d 470, 475-76 (9th Cir. 1987) (citing *Henderson v. Kibbe*, 431

U.S. 145, 155 (1977)). Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'" *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson*, 431 U.S. at 155). The significance of the omission of such an instruction may be evaluated by comparison with the instructions that were given. *Murtishaw v. Woodford*, 255 F.3d 926, 971 (9th Cir. 2001) (quoting *Henderson*, 431 U.S. at 156). A habeas petitioner is not entitled to relief unless the instructional error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice." *Id.*

The California Court of Appeal determined that the instructions "were a correct statement of the law." (Resp't Ex. 2 at 8.) Petitioner does not contend otherwise. Rather, Petitioner argues that additional instructions on supervening causes should have been provided to the jury. Because Petitioner's claim deals with an omission of an instruction rather than an incorrect instruction, Petitioner bears a significant burden. *Villafuerte*, 111 F.3d at 624. The California Court of Appeal determined that Johnson's action was not a supervening cause. (Resp't Ex. 2 at 9.) Johnson's act was an intervening act; however, to qualify as an independent intervening act or a supervening cause that would relieve Petitioner of culpability, Petitioner had to show that the follow-up attack on the victim was an "unforeseeable and extraordinary occurrence." *People v. Crew*, 31 Cal. 4th 822, 847 (2003). In other words, Petitioner remained culpable for the death of the victim if the intervening cause was normal and reasonably foreseeable. *See People v. Cervantes*, 26 Cal. 4th 860, 871 (2001).

The California Court of Appeal reasoned:

> There was no superseding intervening act. Whether or not Johnson's arrival and actions were themselves foreseeable, the death of the victim due to beating was. Once [Petitioner] and the young gang members beat the victim severely, rendering him unconscious and leaving him lying outside, around the corner from [Petitioner's] residence, it was not unforeseeable that he might die due to their actions or the type of injuries they inflicted. Further, [Petitioner] left the young gang members, at least one of whom had behaved as though he intended to kill the victim (by shooting him) on his

porch drinking. He left the injured victim in proximity to these individuals, and at their mercy. [Footnote omitted.] That someone, whether Johnson or one of the gang members, would again assault the victim was certainly foreseeable. Assuming the specific acts of Johnson were not themselves foreseeable, the type of harm or injury which they caused (to the extent they contributed at all to the victim's death) was certainly foreseeable. "The consequence need not have been a strong probability; a possible consequence that might reasonably have been contemplated is enough. . . . The precise consequence need not have been foreseen; it is enough that the [Petitioner] should have foreseen the possibility of some harm of the kind that might result from his act. [Citations.]" (1 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Elements, § 41, p. 247.) Blows to the head, similar to those inflicted by [Petitioner] and the young gang members initially, caused the victim's death. This type of harm was clearly foreseeable; no reasonable jury could have found that it was not. (*Crew, supra*, 31 Cal.4th at p. 847.) The victim's death was a natural and probable consequence of [Petitioner's] actions. (*People v. Roberts, supra*, 2 Cal.4th at p. 320, citing Model Pen.Code, § 2.03, subd. (2)(b) "[when purpose or knowledge of a result is an element of an offense, the actor is not liable for an unintended or uncontemplated result unless, as relevant here, 'the actual result involves the same kind of injury or harm as that designed or contemplated and is not too remote or accidental in its occurrence to have a . . . bearing on the actor's liability or on the gravity of his offense.]'") [Footnote omitted.]

(Resp't Ex. 2 at 9-11.)

As discussed by the California Court of Appeal, Petitioner should have foreseen the possibility that the victim might have died because of his act. *Id.* It is not unforeseeable that a victim who is left unconscious after a severe beating might die due to the injuries sustained during the beating. Because Petitioner's co-conspirators were nearby, Petitioner should have been aware of the possibility that the victim might be attacked a second time. (Resp't Ex. 2 at 3.) An argument that Petitioner was not aware of the possibility that his co-conspirators, or a third party, might attack the victim is unpersuasive.

Even assuming that the follow-up attack against the victim was an unforeseeable intervening act, the evidence demonstrates that Petitioner's actions were at the very least, a concurrent cause of the victim's death, and therefore, Petitioner is not absolved of liability. *See People v. Jennings*, 50 Cal. 4th 616, 643 (2010) (concluding that defendant's act of torturing his child was a concurrent cause of the child's death, and his wife's subsequent act of poisoning the child did not relieve defendant of culpability for murder because his act of torturing the child was a substantial factor in the child's death). The aforesaid is supported by Dr. Reiber, a forensic pathologist, who testified that the "cause of death was a result of blunt injuries to the head," rather than the stab wounds to the neck. (Resp't Ex. 6, Rep.'s Tr. ("RT") at 1723-24.) Thus, Petitioner's claim that the victim died due to Johnson's attacks is not substantiated. Furthermore,

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.LHK\HC.09\Fiu655hcden.wpd    8

1 according to the pathologist's testimony, blows to the head do not cause immediate death.
2 (Resp't Ex. 6, RT at 1736.)  Thus, Petitioner has not shown that the omission of a jury instruction
3 on supervening causes had a substantial and injurious effect or influence in determining the jury's
4 verdict. *Brecht*, 507 U.S. at 637.  Accordingly, the state court decision rejecting Petitioner's
5 claim that the trial court should have provided *sua sponte* instructions on supervening causes was
6 not contrary to, or an unreasonable application of clearly established federal law.  28 U.S.C. §
7 2254(d).  Therefore, Petitioner is not entitled to relief on this claim.

        2.        <u>Ineffective Assistance of Counsel at Trial</u>

Petitioner claims that trial counsel rendered ineffective assistance of counsel by failing to request a correct instruction on supervening causes.  A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254.  *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1410-11 (2011). The general rule of *Strickland*, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  When § 2254(d) applies, "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).  In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner must establish two things.  First, he must establish that counsel's performance was deficient and fell below an "objective standard of reasonableness" under prevailing professional norms.  *Strickland*, 466 U.S. at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

As discussed above, the jury instructions given at trial were adequate; therefore, the

defense counsel was not deficient in his performance because of his failure to request amplified instructions. Furthermore, Petitioner fails to show prejudice. *Id.* Accordingly, the state court decision rejecting Petitioner's claim that the trial counsel should have requested instructions on supervening causes was not contrary to, or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). Therefore, Petitioner is not entitled to relief on this claim.

### 3. Jury Instruction on Burden of Proof for Withdrawal Defense

Petitioner claims that the trial court's failure to provide *sua sponte* instructions on burden of proof for a withdrawal defense for an aider and abettor violated his Fourteenth Amendment due process rights. Here, the trial court provided CALJIC No. 3.03 which states in part that in order to withdraw from the commission of a crime, one must "do everything in [his or her] power to prevent its commission. (Resp't Ex. 2 at 22.) The California Court of Appeal noted that there is a split in authority over whether or not a specific instruction regarding burden of proof for withdrawal was required; however, the Court held that in the instant case, the trial court should have provided *sua sponte* instructions clarifying that "if a jury has reasonable doubt whether or not the [Petitioner] effectively withdrew, they should acquit." (Resp't Ex. 2 at 27.) Nevertheless, the Court found that the failure to provide instructions on burden of proof for a withdrawal defense was harmless error. (*Id.*)

In California, to use the withdrawal defense, one must "produce substantial evidence" showing that "he notified the other principals known to him of his intention to withdraw from the commission of the intended crime or crimes," and that, "he did everything in his power to prevent the crime or crimes from being committed." *People v. Shelmire*, 130 Cal. App. 4th 1044, 1055 (2005). Even if the jury was instructed of the proper burden of proof, it could not have found that Petitioner withdrew from the commission of the crime because Petitioner failed to provide any evidence that he withdrew from the attack. In addition, as the California Court of Appeal held, Petitioner did not do everything in his power to prevent the commission of the crime. Under this record, no reasonable jury could find that Petitioner's actions constituted a withdrawal under California law. This Court can only grant habeas relief if the challenged instruction had a "substantial and injurious effect or influence in determining the jury's verdict."

1 *Brecht*, 507 U.S. at 637.  The evidence at trial did not show that Petitioner made sufficient efforts
2 to withdraw.  Thus, the failure to provide instructions on burden of proof for withdrawal does not
3 meet the *Brecht* standard of a "substantial and injurious effect."  *Id*.  Accordingly, the state
4 court's decision rejecting Petitioner's claim was not contrary to, or an unreasonable application
5 of clearly established federal law.  28 U.S.C. § 2254(d).

## CONCLUSION

For the reasons set forth above, the petition for writ of habeas corpus is DENIED.  The Clerk shall close the file.

## CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.  Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right [or] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

IT IS SO ORDERED.

DATED: ___7/29/11_____

_____
LUCY H. KOH
United States District Judge